**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**LNV CORPORATION**                                                                                          **PLAINTIFF**

**v.**                                                  **3:11-cv-00062-BRW**

**PAUL BECTON a/k/a PAUL BECTON, JR,**                                         **DEFENDANT**
**individually and as Trustee of the
BECTON FAMILY REVOCABLE TRUST**

## ORDER

Pending is Plaintiff's Motion for Summary Judgment (Doc. No. 19). Defendant has responded[1] and Plaintiff has replied.[2] For the following reasons, the Motion is GRANTED.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[3] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[4]

The United States Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a

---

[1] Doc. No. 22. When I refer to "Defendant," I am referring to Paul Becton in both his individual capacity and in his capacity as Trustee of the Becton Family Revocable Trust.

[2] Doc. No. 24.

[3] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

right to the judgment beyond controversy.[5]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[6]  I must view the facts in the light most favorable to the party opposing the motion.[7]  The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[8]

"The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial."[9]  Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[10]

---

[5] *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[6] *Id.* at 728.

[7] *Id.* at 727-28.

[8] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[9] *Jackson v. United Parcel Service*, 643 F.3d 1081, 1085 (8th Cir. 2011) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).

[10] *Anderson*, 477 U.S. at 248.

**II.     BACKGROUND**[11]

Defendant Paul Becton is the trustee of the Becton Family Revocable Trust ("Trust") and also is a member of B&R Property Investments, LLC ("B&R").  On or about December 28, 2001, B&R executed and delivered a $2,561,317.00 Promissory Note to ANB Financial, N.A. ("ANB") (the **"December 2001 B&R Note"**).  The Trust executed and delivered to ANB a Commercial Guaranty "absolutely and unconditionally guaranteeing and promising to pay on demand 100% of the Indebtedness, as defined in the Guaranty of B&R to ANB" (the **"2001 Trust Guaranty"**).  That same day, Becton executed and delivered to ANB a Guaranty "absolutely and unconditionally guaranteeing and promising to pay on demand 100% of the Indebtedness, as defined in the Guaranty of B&R to ANB" (the **"2001 Becton Guaranty"**).

With B&R's authorization, the December 2001 B&R Note was renewed by promissory notes dated August 31, 2002, January 1, 2003, and May 1, 2006.  The May 1, 2006 promissory note had a maturity date of May 1, 2007.

On or about April 18, 2002, a second promissory note was executed and delivered by B&R to ANB in the principal sum of $150,000.00 (the **"April 2002 B&R Note"**).  On April 18, 2002, the Trust executed and delivered to ANB a guaranty "absolutely and unconditionally guaranteeing and promising to pay on demand 100% of the Indebtedness, as defined in the Guaranty of B&R to ANB" (the **"2002 Trust Guaranty"**).  That same day, Becton executed and delivered to ANB a guaranty "absolutely and unconditionally guaranteeing and promising to pay on demand 100% of the Indebtedness, as defined in the Guaranty of B&R to ANB" (the **"2002 Becton Guaranty"**).

---

[11] Unless otherwise noted, all the facts discussed in the Background are found in Doc. No. 21.

With B&R's authorization, the April 2002 B&R Note was renewed by promissory notes dated April 18, 2003, May 3, 2004, May 3, 2005, and May 3, 2006. The May 3, 2006 promissory note had a maturity date of May 3, 2007.

A third promissory note was executed and delivered by B&R to ANB on or about October 2005 in the principal sum of $136,000.00 (the **"October 2005 B&R Note"**). The October 2005 B&R Note was renewed by promissory notes dated October 20, 2006, and October 20, 2007. The October 20, 2007 promissory note had a maturity date of October 20, 2008.

The December 2001 B&R Note, April 2002 B&R Note, and October 2005 B&R Note (collectively the **"Notes"**) were sold to LNV. B&R defaulted under the terms of the Notes and LNV "made demand upon the Trust to pay the amounts due for the notes," but the Trust refused to pay.

In May 2009, Plaintiff filed a Complaint in Foreclosure against B&R in the Circuit Court of Washington County, Arkansas.[12] Becton and the Trust were not parties to the state court proceedings.[13] In the Complaint, Plaintiff sought foreclosure on the first two notes.[14] On July 28, 2009, the court entered judgment in favor of Plaintiff and Plaintiff "sold both properties and applied the net proceeds to the amounts due under the notes executed by Paul Becton."[15] Plaintiff then accepted $400,000.00 to settle with the "other guarantors of B&R's debt."[16]

---

[12] Doc. No. 23, Ex. A.1

[13] *Id.*

[14] *Id.*

[15] Doc. No. 23.

[16] *Id.*

4

## III.     DISCUSSION

Plaintiff argues that each Guaranty given by Becton, in his individual capacity and in his capacity as trustee, is an unconditional and absolute guarantee that the "guarantor will pay, on demand, 100% of the indebtedness of B&R to ANB, its successors and assigns."[17]  And since Plaintiff is the current holder of the notes, it is entitled to enforce the guaranties.  Plaintiff contends that the "evidence establishes the absolute liability of the defendants in the absence of a valid and available affirmative defense."[18]  In his Answer to the Complaint, Defendant asserted the affirmative defenses of waiver, res judicata, and material alteration.  However, Plaintiff points out that language in the Guaranties provides that the guarantor "will not assert, plead, or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of fraud . . . which may be available to Borrower or any other person liable in respect of an Indebtedness . . . ."[19]

In response to Plaintiff's Motion for Summary Judgment, Defendant argues that the case in Washington County acts as a bar to Plaintiff's Motion because the doctrine of res judicata applies.[20]  Defendant contends that the "waiver provisions of the guaranty agreements, or the exculpatory clauses as they are also known, are void against public policy."[21]  Defendant further argues that he should receive a credit against any judgment that may be entered against him based on the $400,000.00 settlement.[22]

---

[17] Doc. No. 20.

[18] *Id*

[19] *Id.*

[20] Doc. No. 22.

[21] *Id*

[22] *Id*.

### A.     Waiver/ Exculpatory Clause

Plaintiff asserts that Defendant cannot raise the affirmative defenses of res judicata and waiver because he agreed to waive these defenses in the Guaranties.[23] While Defendant does not dispute that he waived these defenses, he argues that the waiver provisions as set out in the Guaranties "are void against public policy."[24] He contends that because Plaintiff

> has presented no evidence that Becton was knowledgeable of the potential liability that he was releasing on his own behalf and on behalf of the Trust when he signed the guaranty agreements that included the all encompassing exculpatory clauses that, arguably, only an attorney would understand, Plaintiff should now be barred from standing behind the exculpatory clauses and Plaintiff's Motion should be denied.[25]

"Contracts that exempt a party from liability for negligence are not favored by the law" based "upon the strong public policy of encouraging the exercise of care."[26] The Arkansas Supreme Court has outlined three factors that must be considered when deciding whether an exculpatory clause is enforceable: "(1) when the party is knowledgeable of the potential liability that is released; (2) when the party is benefitting from the activity which may lead to the potential liability that is released; and (3) when the contract that contains the clause was fairly entered into."[27] When reviewing an exculpatory contract, the court is not "restricted to the literal language of the contract" but may also consider "the fact and circumstances surrounding the

---

[23] Doc. No. 24.

[24] Doc. No. 22

[25] *Id*.

[26] *Jordan v. Diamond Equipment & Supply Co.*, 362 Ark. 142, 148-49 (2005).

[27] *Finagin v. Ark. Dev. Fin. Auth.*, 355 Ark. 440, 458 (2003).

execution of the release in order to determine the intent of the parties."[28]  Furthermore, a person signing a contract "is bound to know the contents of the contract that he signed."[29]

Defendant's counsel argues that Plaintiff "has presented no evidence whatsoever that Becton knew what the term res judicata meant when he signed the guaranty agreements."[30]  I find that the exculpatory clauses found in the guaranties are enforceable.  While Defendant argues that he had no knowledge of the potential liability he was releasing, he has failed to offer any evidence to support this position.  The Defendant never questioned the effect of the clauses.  He has offered no evidence of "fraud, duress, undue influence, lack of capacity, mutual mistake, or inequitable conduct sufficient to void the contract," nor did he ever attempt to "change the terms of the contract."[31]  Defendant was required to know the contents of the contract and if he did not understand them, he had a duty to figure them out.  He failed to do so.  Therefore, I find that the exculpatory clauses precluding Defendant from raising the affirmative defenses of res judicata and waiver are enforceable.

### B.     Res Judicata

Even if I were to void the exculpatory clauses, I still find that res judicata is not applicable in this case.  "Under the claim-preclusion aspect of res judicata, a valid and final judgment rendered on the merits bars another action by the plaintiff against the defendant on the same claim or cause of action."[32]  Res judicata prohibits a party from re-litigating claims which

---

[28] *Id*. at 455.

[29] *Jordan*, 362 Ark. at 152.

[30] Doc. No. 22.

[31] See *Jordan*, 362 Ark. at 152.

[32] *Mountain Pure, LLC v. Turner Holdings, LLC*, 439 F.3d 920, 923 (8th Cir. 2006) (citing *Magness v. Commerce Bank*, 42 Ark. App. 72 (1993)).

could have been litigated in the first suit.[33]  "Res judicata, however, only applies when the party against whom the earlier decision is being asserted had a fair and full opportunity to litigate the issue in question."[34]

I agree with Plaintiff that res judicata is not applicable because the issues that were adjudicated in Washington County did not involve the same claims or the same parties as this case.  As Defendant concedes in his Response, "the present claim is based on a distinct obligation from the previous state claim as a guaranty is independent from the undertaking of the principal debtor."[35]  In the Washington County litigation, no claims under any of the guaranties, especially the Defendant's Guaranties, were litigated.  Furthermore, the Defendant was not a party to the action, either in his individual capacity or as a trustee.[36]  Therefore, I find that res judicata is not applicable.

### C. Credit

Defendant argues that there is a genuine issue of material fact as to whether the settlement money received against B&R will be credited against any judgment Plaintiff receives against Defendant.  On March 26, 2012, Plaintiff submitted an affidavit from Michael Cottrell, who is responsible for the collection of the Notes from B&R.[37]  In his affidavit, Mr. Cottrell states that the Defendant and the Trust have "already received credit for the $400,000 payment

---

[33] *Id.* at 924.

[34] *Id.*

[35] Doc. No. 22.

[36] *Dodson v. University of Ark. for Med. Sciences*, 601 F.3d 750, 760 (8th Cir. 2010) ("Res judicata bars relitigation of a claim in a subsequent suit when [among other elements] . . . both suits involve the same parties or their privies.").

[37] Doc. No. 25, Ex. 1.

8

received in the settlement."[38]  Therefore, I find that no genuine issue of material fact exists on this issue and Summary Judgment should be entered in favor of Plaintiff.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Plaintiff's Motion for Summary Judgment is GRANTED (Doc. No. 19).  Before a final judgment is entered, Plaintiff is directed to submit an exact accounting of the amount of money it is entitled to, including pre-judgment interest, the application of the foreclosure and settlement proceeds, and attorneys' fees.  Plaintiff should do so within 14 days of the entry of this Order.  Defendant may respond within 7 days.  The amount of the judgment will be determined based on these pleadings.

IT IS SO ORDERED this 29th day of March, 2012.

/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[38] *Id*.